May it please the court, Benjamin Gutman appearing on behalf of the appellant, and I'm going to try to reserve three minutes for rebuttal. I'll begin with the mootness questions that this court asked the parties to address, unless the court would like me to start somewhere else. This case will be moot under Article 3 once it's too late for the Secretary of State to place IP57 on the November 2020 ballot. That's obviously going to be the case once the election is held, but the question is how far in advance would it still be possible for the Secretary to add IP57 to the ballot? Isn't that date September 3rd? Is there any reason to think that it wouldn't be September 3rd? Correct, that is our view. That's the deadline under state law for the Secretary to file with each county clerk the list of state measures to be voted on, and after that day, county election administrators can start printing and mailing ballots, and the Secretary has no further authority under state law to add measures. So that's correct. That is our view that the very latest that the Secretary would have authority under state law to add measures would be September 3rd. So what about between now and then? I mean, I guess, first of all, can they get any real... well, actually, I had a more fundamental question. The complaint had, confirm this for me, it had both a declaratory judgment and a preliminary injunction that was sought, is that correct? I believe that's correct, yes. The district court judge only ruled on the preliminary injunction, is that correct? Correct, correct. And that's all you appealed was the preliminary injunction. That's correct. So if we were to find the preliminary injunction move, and let's put that aside for a minute, what would happen to the declaratory judgment in the court? Would that still proceed, potentially? Well, I think it's probably going to be moved for the same reasons, maybe not technically until September 3rd. But the declaratory judgment also, as I understood it, was confined to a specific as-applied challenge relating to the circumstances surrounding the 2020 election cycle. And so, unless the plaintiffs were to advance some other, broader theory, I think that's probably going to be moved for the same reasons. Oh, go ahead. I'm sorry, but don't we have to determine whether it's capable of repetition and abating review? Well, right, so that would be the next question to ask. And I think the answer to that question might turn on whether the court agrees with us or the plaintiffs as to what is relevant to the First Amendment analysis. In our view, the threshold question is whether signature and deadline requirements for initiatives can ever be subject to strict scrutiny under the First Amendment. And our argument is that the specific circumstances just aren't relevant to that analysis. Well, we seem to have suggested otherwise in Engle. I mean, Engle didn't apply strict scrutiny, but it seemed to suggest that strict scrutiny could address the merits of that. We don't necessarily need to go into the merits now, except to the extent that it may affect the mootness analysis. Maybe we should stick with what Judge Merguia asked, which is, how does the exception apply here? And I have a fundamental question on that, which is, I have not found any case where the exception to mootness would apply to a preliminary injunction. It may apply to a declaratory judgment, but it seems odd that you would go back down and not moot out a preliminary injunction when, what's the district court going to do with it? He's going to be balancing equities for a preliminary injunction that aren't even in existence anymore. So maybe, could you address that, whether the exception to mootness as a threshold matter ever applies in a preliminary injunction? Your Honor, off the top of my head, I can't think of any case where it has been applied to a preliminary injunction. And I think if you're, if you think that there, that it's even possible that, under Engle, that the specific circumstances affect the analysis, and certainly, as Your Honor pointed out, the equities will strongly affect the preliminary injunction analysis. I think it's hard to say that these events that they're citing here, a pandemic. No, but how close do they need to be? Because, I mean, first of all, Wisconsin, the Supreme Court has said that an as-applied challenge can be capable of repetition, but of fading review. And there seems to be some debate on how close it has to be. So, I mean, I understand your point, which is, it's unlikely that the confluence is going to happen, but how close does it need to be? Do they just need to show that they could be affected in any way in the 2022 election? Right, I do think that's the question, and I don't know that there's a mechanical answer to that, how close it has to be. And again, in our view, I'm sorry, go ahead. Well, I just, I mean, that's an interesting question, how close it has to be, but what happens if the pandemic, I suppose it's possible, goes unabated until 2022? I think the difference is, I think there's no question that if plaintiffs were to immediately shift their focus to trying to get this on the ballot for 2022, they're still going to be dealing with the effects of COVID-19. I think the question is, are they going to be more forewarning as to the circumstances that they're potentially facing? And so, I still think it would be, the analysis would look somewhat different in those circumstances. But isn't the capable of repetition of any review, is there any sort of, if it's possible, that they might be facing the same? Is that the test? Is the test possibility? I thought it was a reasonable expectation. Yeah, it's more than a possibility. It's somewhere closer to likelihood. It's probably somewhere in between there. And it has to be that these plaintiffs will face it, a reasonable expectation. Yeah, I'm trying to figure that out. I think that's what we're trying to do. And whether it was to be completely unreasonable to expect that this would be not an issue for them or factor into the next round. And that's what I'm just trying to determine as well. I understand that. And frankly, from my perspective, it would be helpful to get a decision from this court explaining how the First Amendment analysis works and correcting what I think is a misunderstanding of the Engle decision by some of the federal district courts. But I understand that you can't do that. Okay, now you've jumped way. I mean, you've sort of leapfrogged mootness. I don't know if we want to go there. Are you asking us to, like, I mean, because applying Engle here from my perspective, and so it seems like you're asking us to, you know, ask our court to take it on back and apply another test, or I'm trying to understand your position here. So, on the merits, our position is that, I mean, Engle rejected a First Amendment challenge to the Nevada laws issue there. And I think our argument is, you don't need to overrule Engle. I think what you just need to recognize is that Engle didn't, you know, assumed that the First Amendment could be implicated by that kind of law and said that, but it satisfied scrutiny. That doesn't reject the argument that either the First Amendment simply isn't implicated by those kinds of signature and deadline requirements, or at least the narrower argument that they don't impose severe burdens just as a matter of law on First Amendment-protected activity. So, can I ask you on, so we, it was Reclaim Idaho. I assume you've read the Supreme of the Supreme Court who suggested that there's a circuit split and they would be likely to take this case, and they seem to have suggested that Engle is on the wrong side of that circuit split and would be overruled. But, I mean, I was struck that I'm not sure the problem is with Engle. As I read the case, the problem seems to be with how the Supreme Courts have applied Engle, and that they seem to have taken Engle and sort of ramped it up in a way that was not contemplated. As you pointed out, Engle did not, you know, denied the challenges to the ballot initiative process. So, could you address how much play in the joints do we have there? I'm just, because it seems like Engle did not reject the challenge. It applied a rational basis and specifics that could apply if the restriction was sufficiently burdensome. So, at least that was my view. So, can you factor that into your response there? Sure. Well, again, Engle used the word assumed when it actually talked about what it would mean to be burdensome. So, I think the fairest reading is that Engle was assuming without deciding that question. But regardless of that, I think Judge Nelson is correct that what the district courts have been doing in some of these cases goes well beyond anything that Engle contemplated. What, as I understand it, what the district court in this case did, and I believe it's consistent with what the district courts in a few other cases have done, is to say that under Engle, if a party seeking to get an initiative on the ballot has shown reasonable diligence, then anything that prevents the party from getting that on the ballot is subject to strict scrutiny. And that's just, that creates a very odd set of consequences that I think just shows that can't possibly be the right analysis. I mean, for one thing, it suggests that there are, as a matter, that there would be different signature requirements for different campaigns trying to get identical measures on the ballot because one has the, what the district court called in this case, organizational wherewithal that the district court believes that they are a legitimate organization and another organization that might have actually collected more signatures, you know, maybe doesn't have that organizational wherewithal. That's just not, there's no sensible way to apply the First Amendment like that that would lead to different signature thresholds for different campaigns just based on what the court perceives to be the reasonable diligence. Council, before you conclude your argument, could you address whether or not the Attorney General has standing in this action? Sure. The simple answer is that, I mean, the appellant here has standing to appeal and the dispute is about whether the Attorney General is the lawyer. Now, that's not an Article III issue, and I don't think there's any basis to go outside the record. What distinction are you making between the appellant? Are you making a distinction between the appellant and the Attorney General? Correct. The appellant here is the Secretary of State of Oregon in her official capacity represented by the Attorney General, and so the dispute is not about whether the appellant, who's a state official in an official capacity, who's been enjoined to take certain actions by the federal district court. There's no question that that state officer has standing to appeal. The question is whether the Attorney General can appear on... Well, and whether you can do it without consent. Exactly. And I want to ask this question, too, because the Supreme Court seemed to be somewhat concerned about this. They at least asked you to file a supplemental statement, and you submitted a supplemental statement that said that the Secretary of State consented. I found it very interesting that you didn't do that in this case, and I'm wondering why you didn't do that in this case. Well, fundamentally... If we requested that, would we get the same statement back that you gave to the Supreme Court? I think you would. Then why did you just give it to us? Because it's outside the record, and I have to say, I've never been asked to provide any kind of attorney-client communication like that to a court in the past. I have a more fundamental question, which is whether it gives a third-party standing or whether... It seems to me it's a statute that the Secretary of State would have standing to come in and say, no, the Attorney General is not operating on my behalf. Then we'd have an issue. But in absence of that, I'm not sure that the third party has standing under that statute. I think that's exactly right. There's no dispute here. There's nobody else trying to state. I really don't think there's anything for the court to resolve. Mr. Gutman, when was the specific consent to file this appeal from the Secretary of State given? Well, I don't think I can reveal attorney-client communications, and so I need to be careful about what I say here. What I can say is that our main argument in the Supreme Court on this question, and one of the arguments we made in this court, was that consent to an appeal is not required as a matter of state law. When the Supreme Court asked us point-blank, does the Secretary consent, we responded with a supplemental brief that represented that the Secretary did consent. You're saying the consent was given? Correct. You can't disclose when it was given? I don't think that would be appropriate for me to, I mean, these are attorney-client privileged communications, so I don't think I can say more than what is in the public record already. Well, it's just curious, it was not, I mean, that was a question that was being asked, being asked, being asked, and the answer was not revealed until it was required of you from the Supreme Court. And so I'm just, so in your view, is it relevant? No, it's not relevant, because as a matter of law, as a matter of state law, the Attorney General makes the decision whether to appeal in an official capacity action like this. But as a matter of state law, you can only represent the Secretary of State with consent, isn't that also a matter of state law as well? Yeah, and there's no dispute that the Secretary consented to our appearance in the district court. I think where the dispute is here... The statute says, the statute does say each court, and that's what's given as pause. It does not say each court. Well, hold on a second. I mean, look, I don't think, I don't want to spend too much time on it, but it does say the Attorney General may not appear in an action, a suit, matter, cause, or proceeding in a court. Correct. So, I mean, why don't we read that to say that she has to, theoretically, the Secretary could consent to you defending the action in the district court, but then, you know, she publicly said she wasn't requesting an appeal. But then she filed something in the Supreme Court saying, I consent as an official, but not in my personal capacity. Yes, and I don't think that's the right reading of state law. And here's the example that maybe will make more sense to the court in this context. A habeas corpus proceedings are brought against the warden of whatever correctional facility the petitioner happens to be in. So if we had, you know, someone who was convicted of murder and is, you know, bringing a habeas proceeding, arguing that their Miranda rights were violated, as a matter of state law, it is not up to the warden of the individual facility to decide whether the state's going to defend that conviction and whether the state, if it gets... But the warden is not an officer. I think the warden is an officer for those purposes. I guess what I'm saying is, whatever you think that those... He's an agency representative. Correct. So here, the Secretary said that she was not pursuing an appeal of the district court's injunction on July 14th. I'm sorry, go ahead. If you tell me, you correct me on the record, but it seems like that as of July 14th, the Secretary said she was not pursuing an appeal of the district court's injunction. I think she issued a press release. But the Attorney General filed the appeal the following day. And so I guess I'm just trying to figure out if this is sufficient consent, you know, for purposes of this appeal. So I have a few answers to that. One of which is, I think if you carefully look at what that press release said, it said that the Secretary was not requesting an appeal. It did not say that she, you know, did not consent to appeal, or that she objected to an appeal, or that she would not authorize an appeal. It said that she did not request an appeal. All that state law even arguably requires here is consent. And there's no reason that a state officer could not say, I'm not going to request an appeal, but I'm going to defer to the legal judgment of the state's chief legal officer that an appeal here is warranted in the interests of, you know, in the state's interests overall. I don't see any inconsistency between that. And if we're looking at contemporaneous press releases, you will find a press release or a press statement by the Attorney General that said essentially the same thing. It said that although we understand that the Secretary did not request an appeal, we also understand that the Secretary has, you know, agreed to defer to the Attorney General's judgment as to what the state's legal strategy in this case ought to be. Well, I think there's a way to read this, but you give me your take that the consent had to be in place when the appeal was filed. Again, I don't know that there's any basis in state law for that. And I understand that the court may not agree with me as a matter of what Oregon law says. Does that interpretation just put kind of a screeching halt to the Attorney General's actions? I mean, you don't get consent. You don't, I mean, do you call up and get written consent from every agency before you defend them in court? Or every officer, agency, department, board of commission? I mean, I just, I can't imagine that that's the interpretation here. I agree. I can tell you what our, as a matter of practice, that we do enter into retainer, essentially retainer agreements with state officials who've been sued in the district court. But I have never once done that with respect to an appeal separately. The understanding has always been that once we have appeared in an action, we have agreed to appear in an action on behalf of a state official, that that carries. Have you ever had a state official oppose that or come in and say, we don't consent? Not, no, not that I can think of. There have been occasions where a state official has taken a position that's at odds with what the Attorney General's view of the law is. And sometimes we've even certified outside counsel to represent them. But that's how those things are worked out. I've never, I cannot think of any case where a, you know, the consent that is required by that statute has been withheld. And so I just don't think that's the right interpretation of state law. But even if you thought it was an interpretation of state law that consent was required, all we have here, we don't have anything here that indicates that consent was withheld. And what we do have, if you'll, you know, take our word, you know, my word as an officer of the court in what I filed in the U.S. Supreme Court is that the secretary does consent, may not, you know, may not have requested the appeal, may not necessarily personally agree with the positions that the state is taking, but has consented to have the Attorney General appear in an official capacity proceeding on behalf of the Office of the Secretary of State. And that's what matters. All right, counsel, you've well exceeded your time. We'll give you a couple minutes for rebuttal. I appreciate it. All right, let's hear from the appellees. Mr. Lawrenson. Yes, Your Honor. I'm trying to start my video here. All right. Good morning, Your Honors. May it please the court. My name is Adam Lawrenson. I represent appellees, people, not politicians, and their coalition members. People, not politicians and its coalition sought to qualify an initiative for the ballot to reform Oregon's redistricting process. That qualification occurred under exceptional circumstances because of the pandemic and the resulting stay-at-home orders and social distancing restrictions. The district court in this case provided reasonable relief given those exceptional circumstances as applied to PNP. The district court recognized that because this was not a normal election cycle for PNP, the normal signature threshold and deadline for initiative qualification imposed a severe burden on their First Amendment rights. Can I talk about mootness, if you don't mind, if we can just start there. Although it's not completely impossible that the stay will be lifted before the deadline to put the initiative on the ballot on September 3rd, I think it's probably highly unlikely even if we affirm the district court. But if September 3 comes and goes before the Supreme Court lifts the stay, arguably the case becomes moot. But I'd like to ask you about Capable Repetition and Evading Review and whether the pandemic, it seems like a lot is uncertain because of the pandemic. And can you talk to me a little bit about what your position is on Capable Repetition and Evading Review  Yes, Your Honor. We do not believe this case is moot at the moment. We believe the deadline by which the state could place us on the ballot under the statutes is September 17th, not September 3rd. But regardless of what that deadline is, we do think that the exception to mootness that you outlined applies here. Meyer decided by the Supreme Court was actually decided under exactly that exception to mootness in a case very similar to this. Hold on a second. Meyer wasn't a preliminary injunction. Meyer was a challenge to the statute. So are you, I asked other counsel, are you aware of any case where the exception to mootness has been applied to a preliminary injunction? I'm not, Your Honor, but the exception as Meyer provided it is whether the action itself can be resolved during the limited period of time. So that's the first step. The second step is, is it reasonably likely that the same set of circumstances is gonna come? Now, I've misstated. I wanted to pull it up. There is a reasonable expectation that the same complaining party will be subject to the same action again. So what is your reasonable expectation that you're gonna face the same thing in 2022? We believe that there is a reasonable expectation that as we exist in a world right now where there is a pandemic, we may be restricted in our- Hold on a second. You just, you didn't answer my question. You said we may be. That's not the test. The test is not maybe. What is your basis that there's a reason? Are you telling us that there's a reasonable expectation that this pandemic is gonna be going in June of 2022? I don't have a crystal ball as to the pandemic, Your Honor. So I can't- You don't have a reasonable expectation that the pandemic is gonna be here in June of 2022. I don't have an expectation one way or the other. What I know is my clients are committed to putting the redistricting question before the voters of Oregon, whether it is this cycle, which we hope, in which we've qualified for the ballot under the injunction to do, or in a future cycle, they will continue to do it. We also know that the restrictions- But why can't you do it in 2022? I mean, it seems to me like you've said you had a huge success in doing this electronically. You got the signatures even in the pandemic, much more successful than you thought. You only started eight months ahead of time. If you start two years ahead of time, why don't you think you're gonna be able to get those even if the pandemic were to last till 2022? We believe that we will be able to have a effort to get on the ballot, but the same First Amendment questions that exist now are reasonably likely to exist then. Based on what? What is your reasonable expectation that it's likely to recur? You've said in your brief, this is a once-in-a-lifetime pandemic. This is not like a statutory scheme that sets a deadline that can't be met each time, which is exactly what was at issue in Meijer, which was exactly what was at issue- Do we know whether this is gonna get better or get worse? Maybe Judge Nelson does, but- That's not the test. The test is do you have a reasonable expectation that the pandemic is gonna be here in 2022? It's not, will it be better? Will it be worse? May it happen? May it not? Is there a reasonable expectation that you're gonna face the same thing in 2022? And do we have the facts before us to be able to determine that? I mean, I don't know. This issue wasn't really raised until the Supreme Court issued this day. And so that's an absolutely correct question to ask. I don't mean to say that it's not. I just, to be able to make that determination now, I just, you know, I think that there- What would you have? What other facts would you have? I don't know that it's unreasonable for the pandemic to go into 2021. And it just, there's so many issues of the clock here and when you'll be able to get all the signatures. But Mr. Largs, I mean, what's your best assessment? My best assessment is that the question isn't only on the 2022 election. The question is during the entire period where we could potentially be collecting signatures for that future election. And on that timeframe, we are at a much closer point where the pandemic is not improving dramatically. And I think there is a reasonable expectation that during the early period of that, we could be subject to the same issues that we're facing now and the same burdens on our person. Can I ask you about that? Because there's a series of steps that you need to take, right? Before you can even start collecting signatures for 2022. Does the pandemic affect any of those? For example, applying with the Secretary of State, going through the debate about whether you can get certification to even get the signatures. Does the pandemic affect any of that? Yes, there's an initial signature collection effort that would be affected that triggers this entire process that would occur early on. You have to do an initial signature process, then apply, and then you have another signature process after that. Correct, generally, yes. You have 1,000 to 2,000 signatures. Is that right on the initial signature process? For the last cycle, correct, yes. But ultimately the question here is which framework we should apply to assessing whether First Amendment rights have been burdened. We think the district court applied absolutely the correct standard, which was laid out in the Engel case, which on its facts is very similar and applicable here. I'm happy to discuss the Engel analysis as it was applied because I think it goes to inform exactly all of the fact-finding that the district court did to develop the idea that there is a severe burden here. And the district court reached the correct conclusion that this panel should affirm. It is not a question on Engel, though, because we now have four Supreme Court justices who have suggested that Engel, I don't know what they've suggested exactly, that it may have been incorrectly decided or at least it's inconsistent with other circuits. And what do we do with that? Obviously, that's on a motion for stay. Would that be intervening authority by which we could relook at Engel or are we still bound by Engel? You're still bound by Engel. There is no binding decision by the Supreme Court that says that Engel is not good law, that Engel should not be applied by the Ninth Circuit. So the district court properly applied Engel. This court should apply Engel and affirm the district court's decision. Can we talk about standing? Yes. You argue that the attorney general lacks the Article III standing because it's in contravention to the Oregon statute and she filed this appeal without the consent of the secretary. It sounds like, you know, the consent arguably was given in the statement that was presented to the United States Supreme Court. So does the attorney general, in your view, lack standing? The attorney general does lack standing. The statement that was submitted to the Supreme Court was very artfully worded. So I think it's necessary to break down what exactly was said. First, we have to start from the premise that the secretary of state is the officer that speaks for Oregon regarding elections and the initiative qualification process. The secretary of state is constitutionally responsible for the issues that are here. But it's not constitutionally responsible for the litigation strategies in court. That's correct. But the lawyers here, the attorney general, need to represent their client. Their client ultimately is responsible for deciding whether or not to appeal. The problem I have with your argument is, I agree with what you're saying, but we don't ever start asking attorneys of any sort whether they're in here representing their client's interests. I mean, we don't ever appeal that back. And so if the client isn't in here saying, hey, hold on a second. My interests are not being represented. Why would we go in and say, well, we just assume that the attorney general is, I mean, you're effectively accusing the attorney general of lying, committing some sort of ethical violation by coming into court without consent of their client. This is an exceptional circumstance because you have the secretary of state saying after this injunction is put in place that she is not going to appeal it. That's not what she said. Well, that's not what she said. She said, I'm not requesting an appeal this time. I think it's pretty clear what's going on here. I mean, if you read the Supreme Court, what's very clear is that the secretary of state doesn't want to make any representation personal. Okay, but officially she's made her position very clear, which is she's deferring to the attorney general. And the deferring to the attorney general is the issue here because the attorney general is the lawyer. The lawyer still needs to represent its client's interests. There's been no representation. But who has the standing to raise that? Why do you have the standing to ask whether your opposing counsel is representing his client's interests? Can you give me any other example where we as a court would allow opposing counsel to come in and say, you don't think that your opponent is representing their client's interests? Has that ever happened in any decision you're aware of? It's because this goes to article three standing, which anyone can raise. Well, you're assuming that... No, no, no, no, no. That's a huge assumption that this is article three standing. There's nothing about that statute that says it's article three standing. There's nothing about that statute that suggests you have any standing to even raise it. If anything, it gives the secretary of state the authority to come in and say her interests aren't being represented. But there's nothing about that statute that says you have that authority. It ultimately goes to case or controversy which the court has to satisfy itself that there is here. The secretary of state did not seek this appeal. That is undisputed now, given the Supreme Court filing. But you have a representation from your opposing counsel that they have consent from the secretaries. Are you accusing the opposing counsel of lying to the court? I'm not, your honor. Then why doesn't that end the discussion? Because simply stating that there is consent doesn't explain what exactly there is consent to do, when it was given, or whether it's sufficient to proceed in front of this court. But if she didn't consent, why isn't she here saying she doesn't consent? I can't speak to what the secretary of state is or is not doing here, but the court needs to satisfy itself that there is a case of controversy that the secretary of state actually disputes the injunction as it's been entered. What we've seen... I don't know if it's a question of... The question, it seems to me, is this sufficient consent in light of the statutes of Oregon to prove this to happen? And that's what I'm trying to sort through. I don't know anybody's trying to accuse anybody of being unethical, but it's just the wording of all the statutes regarding this is... There's a question, at least there was sufficient question for the Supreme Court to even inquire about it. And there is enough here to at least explore. It seems, based on what was submitted to the Supreme Court, that there is consent. So tell me which statute or why you think that's not sufficient for this case to go forward. We don't know whether it was specific consent to proceed in this court. There was a general statement that consent was given back at the trial level. We don't know under the statutes that require consent whether it was given for this appeal. Given the Secretary of State's statement that she was not seeking an appeal, we think that's a meaningful distinction that needs to be investigated here. Ultimately, I think the public interest consideration in the injunction needs to be factored in here as well. The appellees in this case want to give the voters of Oregon an opportunity to decide whether or not to reform the redistricting process. There has been a broad show of support, an incredible show of support, given the circumstances of the pandemic, for placing that question on the ballot. Under Angle, the district court properly decided that the voters of Oregon should get that decision. We'd ask you to affirm so they could vote on this issue. I'd like to ask one question. Does Rawlinson will permit me? Of course. Okay, so I'd like to ask about diligence here. It's undisputed, I think, that your client could have filed its petition to place the initiative on the ballot as early as July 2018, but it appears it waited until 2019. And I'm trying to figure out, does that delay factor in? And why is that delay justified? The standard is reasonable diligence, not absolute diligence. So you don't need to show that you filed everything at the earliest possible deadline. The district court conducted extensive fact-finding, taking declarations, hearing witness testimony regarding whether there was reasonable diligence. One of the witnesses for Appellee's, Mr. Blazek, provided testimony and a declaration stating as a consultant who does these initiative campaigns, that PMP started at a normal time when they would be regularly expected to qualify, and that he saw all of the indicia that they were going to have a successful campaign, even given their timing when they started collecting signatures, when they submitted to the state. So this was reasonably diligent, but for the incredibly abnormal, extraordinary circumstances of the pandemic, they would have qualified for the ballot. Is that an objective test or a subjective test on the reasonable diligence? It's objective, but it needs to be as applied here. And so we need to look at whether there was reasonable diligence under the circumstances of the pandemic. And the district court did that analysis. The district court asked other campaigns, what did you do during the pandemic? How many signatures did you collect? And what that evidence showed was that PMP was incredibly successful. If there are no further questions, I'm over my time. Thank you. Thank you, counsel. Two minutes for rebuttal. Thank you, Your Honor. So just picking up on the questions that Judge McGeough was asking about capable of repetition yet evading review and whether there's any factual development that would be helpful to establishing that. I guess one thought that I had on that was that this court could vacate the preliminary injunction and then leave it up to the district court to decide whether the request for declaratory relief is moot. And considering precisely the sorts of considerations that we've all been discussing about capable of repetition yet evading review. So I think that procedurally would be an option. I mean, again, the entire case is not up on appeal, just the preliminary injunction. So to the extent that this is capable of repetition yet evading review, that could be left to the district court to determine in the first instance. Procedurally, that's an option. If the court has any other questions, I am happy to address them. Otherwise, I don't think I have anything further to add. It appears not. Thank you, counsel. Thank you to both counsel for your helpful arguments in this challenging case. Case is argued is submitted for decision by the court. A final case on calendar for argument is Reclaim Idaho versus Brad Little.
judges: Rawlinson, Murguia, Nelson